UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRITTNEY BLACKMON,<br><br>　　　　　　　　　　Plaintiff,<br><br>v.<br><br>AD ASTRA RECOVERY SERVICES, INC.,<br><br>　　　　　　　　　　Defendant. | Case No.: 20-CV-800-CAB-JLB<br><br>**ORDER ON MOTION FOR SUMMARY JUDGMENT**<br><br>**[Doc. No. 22]** |

This matter is before the Court on Defendant Ad Astra Recovery Services, Inc.'s motion for summary judgment. [Doc. No. 22.] The motion has been fully briefed, and the Court deems it suitable for submission without oral argument. *See* CivLR 7.1(d)(1). For the reasons stated below, Ad Astra's motion is granted.

**I.    Statement of Facts**

On November 13, 2014, SCIL Texas, LLC (DBA www.speedycash.com) ("Speedy Cash") issued a $325.00 loan to a borrower purporting to be Plaintiff Brittney Blackmon. [Doc. No. 23-4 at 43-48.] Pursuant to the Credit Access Services Agreement, the borrower agreed to pay Speedy Cash $1,432.67 by May 8, 2015 or prepay the loan any time prior to reduce the total amount owed. [*Id.* at 43.] The borrower never made a payment on the loan. [Doc. No. 22-1 at 6; Doc. No. 23 at 5.] On March 11, 2015, Speedy Cash assigned

the loan account to Defendant Ad Astra Recovery Services, Inc. ("AARS") for collection. [Doc. No. 22-3 at 14.]

AARS was unable to reach Blackmon to collect on the loan account until January 8, 2019 when Blackmon called AARS to verbally dispute the debt. [Doc. No. 22-2 ¶ 12; Doc. No. 23-1 ¶ 8.] During the call, Blackmon told the AARS representative that she had seen a $535 loan on her credit report with AARS listed as the creditor and that she believed the loan to be fraudulent. [Doc. No. 22-4 at 1-2.] The AARS representative confirmed that Blackmon had an AARS account with an outstanding balance of $535.47 for a six-month payday loan issued by Speedy Cash. [*Id.*] The representative then informed Blackmon that to get the loan off her credit report, Blackmon would have to fax AARS either a police report detailing the fraud on the account or a completed, signed and notarized fraud affidavit, along with a letter of dispute explaining why she believed the account to be fraudulent. [*Id.*] The representative told Blackmon the website where she could obtain a fraud affidavit, the fax number to send the requested documentation to, and the AARS account number associated with the loan. [*Id.*] Blackmon then asked, "And is that all I need to start this?" and the representative responded, "That is correct. So, if you were to need any other further information you are more than welcome to give us a call back." [*Id.*]

Following Blackmon's call, AARS continued to report the loan account to the credit reporting agencies. [Doc. No. 23-1 ¶ 9.] However, AARS changed the credit reporting status of the loan account to "disputed" on January 8, 2019, the same day that Blackmon called AARS. [Doc. No. 22-3 at 5; Doc. No. 23-2 at 4 ("Account information disputed by consumer").] Blackmon never sent AARS a police report, a fraud affidavit, or any other documentation evidencing the alleged fraud. [Doc. No. 22-7 at 2 ("Q: She said that you could either submit a copy of the police report to [AARS] or complete a fraud affidavit, correct? A: Correct. Q: Did you do either of those things? A: I don't believe so.").]

On November 19, 2019, Blackmon's attorney, Jeremy Golden, emailed AARS a formal written dispute of the alleged debt pursuant to the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692g(b). [Doc. No. 23-2 at 13.] Golden requested

documentation regarding the debt, including verification of the debt and the name and address of the original creditor. [*Id.*] AARS verified the debt by reviewing and validating the original loan agreement and documentation from Speedy Cash. [Doc. No. 24-2 at 4.] AARS then responded to Golden's letter on November 25, 2019, stating that "the facts in reference to this debt are consistent with the information provided by our client [Speedy Cash]" and enclosing a copy of the loan agreement and a history of charges and payments to the account. [*Id.* at 15.] AARS again provided instructions for filing an identity theft affidavit. [*Id.*]

AARS continued to report the loan account as disputed until the account was recalled by Speedy Cash in March 2020. [Doc. No. 22-2 ¶ 19.] In April 2020, AARS deleted the record of the loan and ceased all reporting of the loan account to the credit reporting agencies. [*Id.* ¶ 20.]

Blackmon filed her Complaint on April 29, 2020, asserting four causes of action for: (1) violation of the FDCPA, 15 U.S.C. § 1692, *et seq.*; (2) violation of the Rosenthal Fair Debt Collection Practices Act ("Rosenthal Act"), CAL. CIV. CODE § 1788, *et seq.*; (3) violation of the Consumer Credit Reporting Agencies Act ("CCRAA"), CAL. CIV. CODE § 1785, *et seq.*; and (4) violation of the California Identity Theft Act ("CITA"), CAL. CIV. CODE § 1798.92, *et seq*. [Doc. No. 10.] AARS filed its Answer to the Complaint on June 10, 2020. [Doc. No. 3.] AARS then filed the present motion for summary judgment on February 12, 2021 [Doc. No. 22], which is now ripe for resolution.

**II.     Legal Standard**

The familiar summary judgment standard applies here. Under Federal Rule of Civil Procedure 56, the court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). When ruling on a summary judgment motion, the court must view all inferences drawn from the underlying facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

The initial burden of establishing the absence of a genuine issue of material fact falls on the moving party. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986). If the moving party can demonstrate that its opponent has not made a sufficient showing on an essential element of his case, the burden shifts to the opposing party to set forth facts showing that a genuine issue of disputed fact remains. *Id.* at 324. To avoid summary judgment, disputes must be both 1) material, meaning concerning facts that are relevant and necessary and that might affect the outcome of the action under governing law, and 2) genuine, meaning the evidence must be such that a reasonable judge or jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see also Torres v. City of Madera*, 648 F.3d 1119, 1123 (9th Cir. 2011) ("Summary judgment is appropriate only if, taking the evidence and all reasonable inferences drawn therefrom in the light most favorable to the non-moving party, there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law."). "Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248; *see also T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) ("Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment.").

**III.    Discussion**

**A.    Claims for Violation of the FDCPA and Rosenthal Act**

Blackmon first claims that AARS violated several provisions of the FDCPA (and therefore the Rosenthal Act[1]), including:

1) 15 U.S.C. § 1692e by using a false, deceptive, or misleading representation or means in connection with the collection of a debt;

---

[1] Blackmon's second cause of action arises under the Rosenthal Act, California Civil Code section 1788.17, which states that every debt collector collecting a consumer debt shall comply with the provisions of the FDCPA. Blackmon's Rosenthal claim solely alleges that AARS violated section 1788.17 by failing to comply with the FDCPA. [Doc. No. 1 ¶ 29.] Because the Rosenthal Act "mimics or incorporates by reference the FDCPA's requirements," *Riggs v. Prober & Raphael*, 681 F.3d 1097, 1100 (9th Cir. 2012), the Court applies the same analysis to Blackmon's FDCPA and Rosenthal claims.

2) 15 U.S.C. § 1692e(2)(A) by giving a false representation of the character, amount, or legal status of a debt;

3) 15 U.S.C. § 1692e(8) by communicating or threatening to communicate to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed;

4) 15 U.S.C. § 1692e(10) by using a false representation or deceptive means to collect or attempt to collect any debt or to obtain information regarding a consumer;

5) 15 U.S.C. § 1692f by using unfair or unconscionable means to collect or attempt to collect a debt; and

6) 15 U.S.C. § 1692f(1) by attempting to collect an amount not authorized by the agreement that created the debt or permitted by law.

[Doc. No. 1 ¶¶ 25-27.]

Blackmon's first cause of action does not specify how AARS violated the FDCPA. It is merely a recitation of the FDCPA provisions listed above. Nevertheless, even assuming that the few factual allegations in Blackmon's complaint are true and supported by the evidence, Blackmon has failed to demonstrate that AARS's conduct surrounding the debt at issue constitutes an FDCPA violation.

The FDCPA is a strict liability statute that "makes debt collectors liable for violations that are not knowing or intentional." *Donohue v. Quick Collect, Inc.*, 592 F.3d 1027, 1030 (9th Cir. 2010) (citing *Reichert v. Nat'l Credit Sys., Inc.*, 531 F.3d 1002, 1005 (9th Cir. 2008)). "Whether conduct violates §§ 1692e or 1692f requires an objective analysis that takes into account whether the least sophisticated debtor would likely be misled by a communication." *See Guerrero v. RJM Acquisitions LLC*, 499 F.3d 926, 934 (9th Cir. 2007). "In judging the actions of a debt collector, we invariably ask whether the information it provided was or its actions were confusing or misleading. . . . Quite simply, we seek to ensure that even the least sophisticated debtor is able to understand, make informed decisions about, and participate fully and meaningfully in the debt collection

process." *Clark v. Capital Credit & Collection Servs., Inc.*, 460 F.3d 1162, 1171 (9th Cir. 2006) (internal citations omitted).

### 1) 15 U.S.C. § 1692e Claims

15 U.S.C. § 1692e broadly prohibits the use of a false, deceptive, or misleading representation or means in connection with the collection of a debt. This includes giving a false representation of the character, amount, or legal status of a debt under subsection 1692e(2)(A); communicating credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed, under subsection 1692e(8); and using a false representation or deceptive means to collect or attempt to collect any debt under subsection 1692e(10).

Though not clearly articulated in her complaint, Blackmon's opposition brief suggests that her § 1692e claims are premised on AARS's continual reporting of the Speedy Cash loan account to the credit reporting agencies after Blackmon notified AARS that she believed the account to be fraudulent. [Doc. No. 23 at 9-10.] Blackmon argues that because she does not owe the debt,[2] Defendant's attempts to "hold her responsible for the balance" and "seek collection on the fraudulent account" by reporting the loan to the credit reporting agencies constitute FDCPA violations. [*Id.*]

First, AARS continuing to report the loan account after Blackmon notified AARS of potential fraud does not constitute a false, deceptive or misleading representation under the FDCPA. Blackmon initially notified AARS that the Speedy Cash loan was fraudulent on January 8, 2019. During the January 8th call, the AARS representative did not assert that

---

[2] Because the Court must view the evidence in the light most favorable to the non-moving party, for purposes of this motion the Court assumes that Blackmon did not take out a loan from Speedy Cash and that she does not owe the debt that is the subject of this case.

Blackmon was responsible for the debt or attempt to collect from her.[3]  Rather, the representative told Blackmon that getting the account off her credit was "not a problem" and gave her instructions for providing AARS with documentation to support her fraud claim.  [Doc. No. 22-4 at 2.]  An allegation of fraud or identity theft, without more, does not give rise to an FDCPA violation.  *See Patton v. Fin. Bus. and Consumer Sols., Inc.*, No. 2:16-CV-2738 JCM (CWH), 2018 WL 3620488, at *3 (D. Nev. July 30, 2018) ("Patton's contention that he was a victim of identity theft and that he never opened the [disputed account] does not give rise to a FDCPA violation."); *Story v. Midland Credit Funding, LLC*, No. 15-cv-194-AC, 2015 WL 7760190, at *7 (D. Or. Dec. 2, 2015) ("[C]ommunications regarding that debt are not deemed false, misleading, or deceptive simply because the alleged debt was incurred through identity theft."); *Taylor v. Midland Credit Mgmt.*, No. 1:07-CV-582, 2008 WL 544548, at *3 (W.D. Mich. Feb. 26, 2008) ("Even if Taylor is correct in his assertion that he does not owe the Debt, his assertion that he is being pursued for a debt he does not owe is not sufficient in and of itself to make out a claim of false or misleading representations under § 1692e.").

Further, AARS fulfilled its legal duties upon Blackmon's notification that she disputed the debt.  Blackmon asserts that AARS wrongly continued to report the debt after its initial phone call with her on January 8, 2019.  However, "a collection agency does not have a duty to delete all references to a debt whenever such debt is contested."  *Bloom v. I.C. Sys., Inc.*, 972 F.2d 1067, 1069 (9th Cir.1992) (finding no "false" representation when the debt collector requested further written verification that no debt was owed and

---

[3] In her opposition brief, Blackmon alleges that during the call, "[AARS] requested Ms. Blackmon to resolve the account which is an attempt to collect payment." [Doc. No. 23 at 10.] This misstates the evidence before the Court. The transcript of the January 8, 2019 call, lodged as Exhibit B to the Declaration of Tracy Bengtson [Doc. No. 22-4], reveals that the AARS representative asked Blackmon, "Were you wanting to go ahead and get [the loan] resolved today?" Blackmon responded, "Um, it's fraud . . . But, yeah, I just want to get it off my credit." The representative responded, "Okay, not a problem." Blackmon's counsel is admonished to keep in mind Rule 11 duties when making representations to the Court.

immediately reported the debt as disputed).  AARS began reporting the debt as "disputed" to the credit reporting agencies the very same day that it initially spoke to Blackmon. Despite Blackmon's failure to provide the requested documentation substantiating her fraud claim,[4] AARS continued to report the debt as disputed and made no attempt to collect the debt from that day forward.

Moreover, when Blackmon's counsel sent AARS a formal written dispute of the account, AARS fulfilled its duty under 15 U.S.C. § 1692g to verify the account by validating the original loan agreement and related documentation from its client, Speedy Cash.  [Doc. No. 24-2 at 4.]  *See Clark*, 460 F.3d at 1173-74 ("Verification of a debt involves nothing more than the debt collector confirming in writing that the amount being demanded is what the creditor is claiming is owed.") (internal citations omitted).  The FDCPA does not impose upon the debt collector a duty to independently investigate the claims presented by the alleged debtor.  AARS was only required to confirm with its client the amount being claimed, which it did, and it was therefore entitled to rely on its client's statements in continuing to report the debt.  *See id.* at 1174; *see also Landaker v. Bishop, White, Marhall & Weibel, P.S.*, No. C12-5898 RJB, 2012 WL 6025741, at *4 (W.D. Wash. Dec. 4, 2012) ("A debt collector is entitled to rely on the creditor's statements to verify the debt, within reasonable limits, and a debt collector does not have a duty to independently investigate claims presented by creditor.  There is nothing false, unfair, or unconscionable in the actions of Bishop," where after receiving Plaintiff's statement that the debt was not his, Bishop verified the debt and requested documentation to support Plaintiff's claim).

In assessing FDCPA liability, the Court is concerned with "genuinely misleading statements that may frustrate a consumer's ability to intelligently choose his or her

---

[4] Blackmon argues that she was "unable to send in a police report because the police did not provide one to her," but that she was able to subpoena a copy of the report after initiating this case.  [Doc. No. 23 at 6.]  However, the Court notes that the police report Blackmon attaches to her declaration as Exhibit 2 [Doc. No. 23-2] is a Crime/Incident Report for a separate instance of alleged identity theft and is unrelated to the Speedy Cash loan at issue here.

response." *Donohue*, 592 F.3d at 1034.  None of AARS's communications undermined Blackmon's ability to intelligently choose her action concerning the loan account.  After Blackmon told the AARS representative on the January 8, 2019 call that she wanted to get the loan account off her credit report, the representative gave her specific instructions for how to do so.  The representative advised Blackmon that she could obtain a police report or complete, sign and notarize a fraud affidavit available on www.ftc.gov, send either one to AARS's office via fax, and include a letter of dispute describing her fraud allegation.  [Doc. No. 22-4.]  The representative also gave Blackmon the account number associated with the loan and invited her to call back if she needed any further information.  [*Id.*]  Subsequently, in the November 25, 2019 letter to Blackmon's counsel, AARS again delineated how Blackmon could substantiate the alleged identity theft.  [Doc. No. 22-5 at 1.]  There was nothing about AARS's statements that would confuse or mislead even the least sophisticated debtor's attempt to remove the fraudulent account from their credit report.

The record reflects that AARS did not use any false, deceptive, or misleading representation or means in connection with the collection of the debt at issue here.  Accordingly, AARS is entitled to summary judgment on Blackmon's § 1692e claims.

### 2) 15 U.S.C. § 1692f Claims

To prevail on a claim under § 1692f, a plaintiff must show that a debt collector used "unfair or unconscionable means to collect or attempt to collect any debt."  This includes attempting to collect an amount (including any interest, fee, charge, or expense incidental to the principal obligation) not expressly authorized by the agreement that created the debt or permitted by law.  15 U.S.C. § 1692f(1).  Although Blackmon's claim contains no more than a recitation of the relevant statute provision, Blackmon appears to allege in her opposition that AARS violated § 1692f and § 1692f(1) by attempting to collect a debt that Blackmon did not owe.  [Doc. No. 23 at 11.]

The Court first notes that there is no indication in the record that AARS engaged in any debt collection activity after January 8, 2019 beyond reporting the debt to the credit

reporting agencies. Nor has Blackmon explained how AARS's truthful credit reporting, after verifying the debt with its client and reporting the debt as disputed, constitutes unfair or unconscionable action under the FDCPA. Moreover, section 1692f(1) more aptly addresses the abusive practice of attempting to collect an amount greater than that which is owing—not an attempt to collect a debt from the wrong person. *See Clark*, 460 F.3d at 1178 ("[W]hen Capital pursues a debt it *knows* is overstated, . . . [it] seeks to collect an amount that is not permitted by law in contravention of § 1692f(1)." (emphasis in original)). Accordingly, "where the amount being collected by the collection agency [is] not different than the amount owed, § 1692f(1) [is] inapplicable to the plaintiff's claim that the collection agency was attempting to collect the debt from the wrong person." *Taylor*, 2008 WL 544548, at *4.

Blackmon's threadbare allegations are not supported by the record and are insufficient to state a claim under section 1692f. Accordingly, AARS is entitled to summary judgment on Blackmon's remaining FDCPA claims.

**B.     Plaintiff's Claim for Violation of the CCRAA**

Blackmon's third cause of action alleges that AARS violated the CCRAA by furnishing information to a consumer credit reporting agency that it knew or should have known was incomplete or inaccurate. The relevant part of the CCRAA states that a person "shall not furnish information on a specific transaction or experience to any consumer credit reporting agency if the person knows or should know the information is incomplete or inaccurate." CAL. CIV. CODE § 1785.25(a).

There is no indication before the Court that AARS knew or should have known that the information it reported to the credit reporting agencies regarding Blackmon's alleged debt was incomplete or inaccurate. As discussed above, AARS fulfilled its duty to verify the debt by confirming with Speedy Cash that the loan account was valid. *See Clark*, 460 F.3d at 1173-74. AARS was under no obligation to conduct further independent investigation of Blackmon's fraud claim. Additionally, despite AARS's requests for corroborating evidence, Blackmon never provided AARS with written documentation of

the alleged fraud. Blackmon's unsubstantiated claim of identity theft, without more, is insufficient to create liability under the CCRAA. *See Toroussian v. Asset Acceptance, LLC*, No. CV 12-03519 DDP (AGRx), 2013 WL 5524831, at *5 (C.D. Cal. Oct. 4, 2013) (finding that Plaintiff's claim that she was a victim of identity theft alone did not establish Defendant's liability under CCRAA when Plaintiff never provided Defendant with requested documentation supporting her claims).

Based on this record, Blackmon has not established that AARS knew or had any reason to know that the Speedy Cash loan account was fraudulent. Therefore, AARS is entitled to summary judgment on Blackmon's third cause of action under the CCRAA.

### C. Plaintiff's Claim for Violation of the CITA

Blackmon's final claim for relief alleges that AARS violated the CITA, CAL. CIV. CODE § 1798.92, *et seq.*, by failing to diligently investigate after Blackmon notified AARS that she was a victim of identity theft and by continuing to pursue its claim against her. [Doc. No. 1 at 6.] Pursuant to CITA, a "person may bring an action against a claimant to establish that the person is a victim of identity theft in connection with the claimant's claim against that person." CAL. CIV. CODE § 1798.93(a). The alleged identity theft victim may recover actual damages or attorney's fees from the claimant if she shows that she provided written notice to the claimant at least 30 days prior to filing suit that a situation of identity theft might exist, including, upon written request of the claimant, a valid copy of the police report regarding the alleged identity theft. CAL. CIV. CODE § 1798.93(c)(5).[5]

---

[5] The alleged victim may also recover civil penalties from the claimant, in addition to other damages, if she establishes by clear and convincing evidence that: (1) at least 30 days prior to filing suit, she provided written notice to the claimant that a situation of identity theft might exist; (2) the claimant failed to diligently investigate the possible identity theft; and (3) the claimant continued to pursue its claim against the victim after it was presented with facts that were later held to entitle the victim to a judgment pursuant to CITA. CAL. CIV. CODE § 1798.93(c)(6). Civil penalties under section 1798.93(c)(6) are only available "in addition to" the remedies of section 1798.93(c)(5). Therefore, if Blackmon cannot meet the requirements of section 1798.93(c)(5)—which the Court finds that she has not—she cannot meet the stricter requirements of section 1798.93(c)(6). *See Toroussian v. Asset Acceptance, LLC*, No. CV 12-03519 DDP (AGRx), 2013 WL 5524831, at *4 (C.D. Cal. Oct. 4, 2013)

California Civil Code section 1798.92(a) defines "claimant" as "a person who has or purports to have a claim for money or an interest in property in connection with a transaction procured through identity theft." The Ninth Circuit has recognized that the term "claimant" "reflects a present tense interest in a debt or attempt to collect." *Satey v. JPMorgan Chase & Co.*, 521 F.3d 1087, 1092 (9th Cir. 2008). Thus a "claimant" under CITA does not include "a person who had an interest in a disputed debt at some point in the past, but who no longer retains the interest at the time suit is filed." *Id.* at 1093.

It is undisputed that in March 2020, the AARS loan account at issue was recalled by the original lender, Speedy Cash. [Doc. No. 22-2 ¶ 19; Doc. No. 23-4 at 30, lns. 14-18.] When Speedy Cash recalled the loan account, AARS lost any collection rights to the account. [*See* Doc. No. 23-4 at 20 ("Q: Does Ad Astra still have the collection rights to this account? A: No. . . . This account was recalled back to Speedy Cash. . . . I believe it was in early 2020, late 2019. I believe early 2020.").] It is also undisputed that by April 2020, AARS deleted the "trade line" record of the loan account, which ceased all reporting of the account to credit reporting agencies. [Doc. No. 22-2 ¶ 20; Doc. No. 23-4 at 30, lns. 14-18.] Therefore, prior to the filing of Blackmon's complaint on April 29, 2020, AARS no longer had any interest in any debt owed by Blackmon.

Because AARS closed Blackmon's loan account by April 2020 and did not possess an interest in any debt or collection efforts against Blackmon when she filed this lawsuit, Blackmon's CITA claim against AARS was not viable when she filed suit on April 29, 2020. *See Romero v. Monterey Fin. Servs., LLC*, No. 19cv1781 JM (KSC), 2021 WL 268635, at *8 (S.D. Cal. Jan. 27, 2021) (finding that debt collector was not a "claimant" as a matter of law after it closed Plaintiff's account and permanently divested itself of its interest in the account prior to Plaintiff's lawsuit being filed); *see also Soria v. U.S. Bank N.A.*, No. SACV 17-00603-CJC(KESx), 2019 WL 8167925, at *9 (C.D. Cal. April 25,

---

("Having failed to meet the more permissive requirements of [section 1793(c)(5)], Plaintiff cannot possibly satisfy the stricter requirements and obtain the greater relief of Section 1793(c)(6).").

2019) ("As U.S. Bank has closed the loans, it is undisputed that U.S. Bank does not assert a claim against [the alleged identity theft victim] related to the [closed loans]."). Accordingly, AARS is entitled to summary judgment on Blackmon's CITA claim.

## IV. Conclusion

For the reasons set forth above, Defendant's motion for summary judgment is **GRANTED**, and Plaintiff's claims against Defendant are **DISMISSED WITH PREJUDICE**. The Clerk of Court shall enter **JUDGMENT** in favor of Defendant and against Plaintiff.

It is **SO ORDERED.**

Dated: April 20, 2021

Hon. Cathy Ann Bencivengo
United States District Judge